UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TIMOTHY DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00263 |
| | § | |
| ABDON CALLAIS OFFSHORE, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Timothy Davis, a deckhand for Defendant Abdon Callais Offshore, felt his arm jog as he was stowing away new cargo chain onboard Abdon's ship, the M/V JESSICA MOORE. He asserts the following claims based on the injuries he allegedly incurred: a Jones Act negligence claim, an unseaworthiness claim, and maintenance and cure. Abdon Callais Offshore filed a motion for partial summary judgment, seeking dismissal of all but the maintenance and cure claim. Because Davis has presented some evidence from which a jury could conclude that Abdon was at fault, the Court denies summary judgment on Davis' negligence claim. Davis' unseaworthiness claim is more problematic, but the Court will reserve a ruling on summary judgment as to that claim because its factual basis largely overlaps with the negligence claim that will be submitted to the jury.

**I.   BACKGROUND**[1]

At the time of his injury, Davis had worked onboard the M/V JESSICA MOORE for Abdon as a deckhand for approximately two years. Docket Entry No. 18 at 1. Deckhands on the JESSICA MOORE are responsible for keeping the decks clear, putting away supplies (including storing cargo chain in chain lockers), keeping the boat clean, and helping to tie up the ship. Docket Entry No. 22 at 2. As part of his job training, Davis was taught proper lifting technique and "stop-work authority," which requires crew to stop and wait for assistance when they encounter tasks they cannot undertake on their own.

One week prior to the incident that led to this suit, Davis noticed a box of cargo chain on the back deck of the JESSICA MOORE that he felt needed to be stowed or put away. *Id.* at 3. The cargo chain was approximately 75 feet long, and the box of cargo chain contained roughly 15 tangled lengths of chain. *Id.* at 4. On May 25, 2011, Davis asked his supervisor, Captain Norman Hart, if he should "put the cargo chain up," to which Hart replied that Davis should "go ahead" and do so. *Id.* at 3. As Davis tried to remove the chain in the box, he yanked on the tangled chain and "felt his arm jog." *Id.* at 4. He did not know the full extent of his injuries at that time, so he continued to put up the cargo chain until he finished the job. Roughly two weeks later, after continuing to work as a deckhand and feeling

---

[1] Given the summary judgment posture, the following recitation of facts resolves all credibility determinations in Davis' favor.

that the pain in his arm was worsening, he reported his injury to Hart. After filing an incident report, which noted that Davis felt a pull in his right shoulder after he pulled the cargo chain from the box, Abdon sent Davis to a doctor. *Id.* at 4–5.

Davis filed his initial complaint against Abdon in the Houston Division in June 2012. The case was transferred to this Division in September 2012. Docket Entry No. 10. Abdon now argues in its motion for partial summary judgment that it was not negligent and that the JESSICA MOORE was seaworthy.

## II. STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III. NEGLIGENCE

The Jones Act provides that a seaman injured in the course of his employment "may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. This language "create[s] a statutory

cause of action for negligence." *Atl. Sounding Co., Inc. v. Townsend*, 129 557 U.S. 404, 415 (2009). "A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc). A Jones Act employer is held to the duty of care required under ordinary negligence law. *Id.* at 339. But the burden on plaintiffs to establish causation is "very light"—a defendant "must bear responsibility if his negligence played any part, even the slightest, in producing the injury." *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982).

Abdon argues that Davis volunteered to put away the cargo chains, that he was properly trained in lifting technique and "stop-work authority," and that he could have requested additional help if he needed it. Citing evidence about its job training program and Davis' questionable decisions on the day of and following the incident, Abdon argues that summary judgment is appropriate on both the breach and causation elements of Davis' negligence claim.

The parties first dispute whether Davis volunteered to put the chains away. To warrant summary judgment on this issue, Abdon would have to show undisputed evidence that stowing the cargo chain was discretionary. For instance, a court granted summary judgment against a casino boat cocktail server injured after carrying too many drinks on her tray because the undisputed evidence showed

that she had discretion in determining how many drinks to carry at any one time. *Lindemann v. Empress Casino Hammond Corp.*, 1999 WL 59839, at *4 (N.D. Ill. Jan. 27, 1999). But *Lindemann* is unavailing because the evidence here is disputed concerning whether Davis had discretion in choosing whether to stow the cargo chain. Davis testifies that Hart instructed him to complete the task and argues that it fell directly within his job as a deckhand to put the cargo chain away. Furthermore, deposition testimony from Abdon's President and CEO indicates that removing cargo chain from a box and stowing it falls directly within Davis' responsibilities as a deckhand. Docket Entry No. 22-2 at 11. Combined with Hart's instruction that Davis "go ahead" and stow the chain, Davis has presented a fact issue on whether he voluntarily stowed the cargo chain. *See Fasold v. Del. River & Bay Auth.*, 117 F. App'x 836, 839 (3rd Cir. 2004) (overturning a grant of summary judgment that was based on the lack of a direct order for the plaintiff to lift a heavy object, in part because the plaintiff did not perceive her duty to lift the object as optional).

Abdon Callais Offshore also seeks summary judgment on the broader issues of whether it was negligent and whether its negligence caused Davis' injuries. Abdon acknowledges that Davis pulled, rather than lifted, the tangled chain out of its box. Docket Entry No. 22-2 at 17. Davis was trained in proper lifting techniques, but not in proper pulling techniques. The techniques for lifting and

pulling might appear at first glance to be indistinguishable, but Captain Hart acknowledged that they are, in fact, separate motions, *see* Docket Entry No. 22-3 at 7, and a jury could therefore conclude that the failure to provide training on how to safely pull unwieldy objects out of a box led to Davis' injuries.  Courts in this circuit have imposed liability in similar circumstances; in *Nichols v. Weeks Marine Inc.*, for example, the court imposed liability after a bench trial when the defendants "failed to instruct or provide the crewmen with a safe method for untangling" a cable from a side drum.  513 F. Supp. 2d 627, 636 (E.D. La. 2007).

Courts rarely decide Jones Act negligence claims on motions for summary judgment, even when plaintiffs present relatively weak claims alleging failure to provide adequate training.  For instance, Abdon points to *Bush v. Keystone Shipping*, in which the Jones Act plaintiff was injured while carrying lumber.  1999 WL 280413, at *1 (E.D. La. May 3, 1999).  The Court determined that the defendant was not negligent because it had trained the plaintiff "to ask for additional help in carrying heavy objects."  *Id.* at 4.  But that decision was only made after a bench trial.  In other words, the negligence claim, though eventually disposed of in favor of the defendant, was resolved by a fact finder. And in a case similar to this one, the court allowed the plaintiff's claim that he was injured while lifting heavy objects onboard the defendant's ship to proceed to a jury.  *Alvarado v. Diamond Offshore Mgmt. Co.*, 2011 WL 4915543, at *2 (E.D. La. Oct. 17,

2011). Part of the plaintiff's argument in *Alvarado* that convinced the court to deny summary judgment was his assertion that his employer failed to properly train him in the proper lifting techniques that would have prevented his injuries. *Id.*; *see also Campbell v. Teco Barge Lines*, 2006 WL 1898919, at *2 (S.D. Ill. July 5, 2006) (denying summary judgment on a Jones Act negligence claim based on injuries that were incurred when plaintiff carried heavy groceries despite "skimpy" evidence of negligence).

Abdon cites *Williams v. Int'l Constr. Grp.*, 2011 WL 1116312 (E.D. La. Mar. 23, 2011), as an instance in which a court granted summary judgment on a Jones Act negligence claim. *Williams* is distinguishable, however, because in that case the plaintiff admitted that he was properly trained in lifting techniques, and the task that led to his injury indisputably involved lifting a heavy object. *Id.* at *4. With no evidence at all of improper or inadequate training, a lack of crew to assist with the task, or a lack of proper equipment, the court granted summary judgment. *Id.* In the highly factbound world of negligence law, these distinctions—even if insubstantial—warrant a different result in this case.

Finally, Abdon argues that Davis was negligent too—he failed to ask for help, failed to stop working when he felt a jog in his arm, and then continued working for two weeks before reporting his injury. But one of the main reasons for enactment of the Jones Act in 1920, and for the 1908 enactment of the Federal

Employer's Liability Act on which it is based, was eliminating the common law doctrine of contributory negligence. *See Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 571 (5th Cir. 2012) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542–43 (1994)) ("In order to further [the Acts'] humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers[.] [The Acts] abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of comparative negligence, and prohibited employers from exempting themselves from [the Acts] through contract; a 1939 amendment abolished the assumption of the risk defense."). As such, Davis' failures to ask for assistance or recognize when he should have stopped working might lower, but should not completely bar, his recovery. *See Grab v. Traylor Bros., Inc.*, 796 F. Supp. 2d 788, 794 (E.D. La. 2011) (citing *Johnson v. Cenac Towing*, 544 F.2d 296, 302 (5th Cir. 2008) ("The Jones Act adopts a comparative negligence standard in which a seaman's recovery is reduced in proportion to his fault if he contributes to his own injury by not exercising ordinary prudence under the circumstance."); *see also, e.g., Scott v. Fluor Ocean Servs., Inc.*, 501 F.2d 983, 984 (5th Cir. 1974) (per curiam) (upholding a reduced damages award for plaintiff in a Jones Act negligence suit when jury found him 75 percent responsible for his injuries).

Because "the issues of fact and law are too intertwined to grant summary judgment at this stage," *see Alvarado*, 2011 WL 4915543, at \*2, the Court denies Abdon's motion on Davis' negligence claim.

### IV. UNSEAWORTHINESS

The unseaworthiness claim may well warrant different treatment. "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001) (citation omitted). The plaintiff "must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.* This causation standard is generally stricter than the standard in negligence claims: it requires that Davis show that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Phillips v. Western Co. of North Am.*, 953 F.2d 923, 928 (5th Cir. 1992) (citation and internal quotations omitted).

"A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might

be improper." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). "[A]n unsafe method of work may render a vessel unseaworthy." *Phillips*, 953 F.2d at 928.

Davis claims that the JESSICA MOORE was unseaworthy because Abdon "(1) had no policies or procedures related to unloading or putting cargo chain away, and (2) did not provide Mr. Davis any training or instruction on how to pull, unpack, or put away the cargo chain." Docket Entry No. 22 at 22. Essentially, Davis asserts that because the method he used to stow the cargo chain was unsafe, the JESSICA MOORE was unseaworthy. The Fifth Circuit addressed a similar situation in *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300 (5th Cir. 1985). There, the plaintiff was acting as a floorhand on a barge responsible for cutting and slipping the barge's drill line, which is a cable used for lifting and lowering equipment. *Id.* at 301–02. In the middle of working on the drill line, he sustained a back injury. He brought an unseaworthiness claim, alleging that the defendants instructed him to use an unsafe method for cutting and slipping the drill line. The district court "failed to include a charge that would have informed the jury that a vessel is unseaworthy if it employs an unsafe method of operation or work." *Id.* at 302. The Fifth Circuit affirmed the district court's instructions, noting that there was no evidence indicating that the method the plaintiff used to cut the drill line was unsafe and that no one had previously been injured using that

method to cut the drill line. *Id.* at 304. It concluded that "[c]learly a plaintiff must present sufficient evidence to raise a jury question whether a method of operation is unsafe, before a fully equipped vessel, with all its gear in good working order, can be rendered unseaworthy." *Id.*

As Davis' claim stands now, it encounters comparable problems to those that halted the plaintiff's unseaworthiness claim in *Rogers*. Like that plaintiff, Davis has not explained why the method he used to stow the cargo chain was unsafe. Nor has he shown that any other deckhand onboard the JESSICA MOORE has been injured in the course of stowing cargo chain. In fact, the President of Abdon testified that "[t]his is the first guy that allegedly hurt himself jerking on a chain, I mean a binder chain, out of a box, and I have worked with thousands of people." Docket Entry No. 22-2 at 17. Finally, Davis has made no allegation that the JESSICA MOORE was in any other way unseaworthy. These facts lead the Court to conclude that his unseaworthiness claim may well warrant dismissal as a matter of law. Such an outcome would be consistent with the subtle but meaningful distinctions between negligence and seaworthiness claims. *See, e.g.*, *Harrison v. Sea River Maritime, Inc.*, 181 F. Supp. 2d 691, 696 (S.D. Tex. 2002) (finding after a bench trial that defendant was negligent for failing to instruct plaintiff in proper method of carrying objects, but also finding that the vessel was seaworthy because "no [] items or pertinences aboard the vessel caused or

contributed to causing plaintiff's injuries"); Thomas Schoenbaum, ADMIRALTY AND MARITIME LAW § 6-25, at 494 (5th ed. 2011) ("Since unseaworthiness is conceptually distinct from Jones Act negligence, a jury may consistently reach opposite verdicts on the unseaworthiness and Jones Act claims without reversible error."). But because the Court is allowing the negligence claim to proceed to trial, and the evidence presented in support of that claim will largely overlap with the seaworthiness evidence, the Court exercises its discretion to reserve ruling on the unseaworthiness claim until it has had the benefit of seeing the full record developed at trial.

## V.  CONCLUSION

For the reasons explained above, Davis has presented enough evidence on his Jones Act negligence claim to proceed to a jury. Accordingly, Defendant Abdon Callais Offshore, LLC's Partial Motion for Summary Judgment (Docket Entry No. 18) is **DENIED IN PART** with respect to the negligence claim **AND RESERVED IN PART** with respect to the unseaworthiness claim.

SIGNED this 25th day of October, 2013.

_____
Gregg Costa
United States District Judge